# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Case No. 2:10CR00010 |
| v. | ) **OPINION** |
| DENNIS R. MIRACLE, | ) By: James P. Jones |
| | ) United States District Judge |
| Defendant. | ) |

*Randy Ramseyer, Assistant United States Attorney, Abingdon, Virginia, for United States; Dennis R. Miracle, Pro Se Defendant.*

The defendant, proceeding pro se, filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255, alleging that counsel's ineffective assistance caused him to enter an invalid guilty plea pursuant to a written Plea Agreement due to diminished capacity. The government has filed a Motion to Dismiss, seeking to enforce the defendant's Plea Agreement waiver of his right to bring a § 2255 motion, and the defendant has responded. After review of the records, I will grant the government's motion and deny the § 2255 claims as waived.

I

On August 27, 2010, park rangers saw a red Toyota pickup truck driving through the Cumberland Gap National Historical Park (the "Park") in Kentucky and heard it strike a bridge. They followed as the truck then traveled into the Virginia section of the Park, weaving between different traffic lanes, before they directed the driver to pull over. One ranger asked the driver for his driver's license, registration, and proof of insurance. The driver's eyes looked bloodshot and watery, and the ranger detected a strong odor of alcohol. The driver, later identified as defendant Dennis R. Miracle, said he did not have his driver's license with him.

When Miracle opened the glove compartment to look for his license, the ranger saw three boxes of ammunition inside. The ranger asked Miracle if there were any guns in the vehicle, and Miracle nodded affirmatively. Asked to tell where the guns were without reaching for them, Miracle pointed at his seat. The ranger asked if it was under the seat, and Miracle nodded and said, "Under the seat." The rangers located a .22 caliber Ruger pistol in a box under the driver's seat. After the rangers impounded the vehicle, they found another, loaded pistol under the driver's seat. Both weapons had been manufactured outside Virginia.

At the scene of the traffic stop, Miracle failed a field sobriety test. When he later underwent a breath alcohol test, it measured .12 alcohol content. Records

indicated that Miracle did not have a valid driver's license, as his license had been suspended. At the time of his arrest, Miracle had previously been convicted of several felonies.

Miracle's counsel negotiated a pre-indictment plea agreement, which allowed Miracle to plead guilty to two petty offenses — driving under the influence and with a suspended license — and one felony charge of possessing firearms after having been convicted of a felony. On September 27, 2010, Miracle waived indictment and entered a guilty plea pursuant to the Plea Agreement. Under the agreement, he waived his right to appeal his sentence and his right to collaterally attack the Judgment and, in exchange, several other petty offense charges were dismissed.

During the plea colloquy, Miracle indicated that he was 52 years old and had obtained his GED. He denied then being under the influence of drugs or alcohol, denied having been treated for mental or emotional problems of any type, and denied having any serious health problems. His attorney affirmed that she had no doubt as to Miracle's competency to enter a guilty plea.

I questioned Miracle about his waiver of indictment and found, from his responses, that he was fully competent to make this waiver and was voluntarily doing so. I then asked Miracle if he had read the Plea Agreement and discussed it and the charges with counsel, and he said yes. The prosecutor reviewed the terms

of the Plea Agreement, and Miracle indicated his understanding. I expressly asked Miracle, "Do you understand that under this plea agreement you waive or give up your right to collaterally attack your sentence, meaning you could not at a later time file a motion or petition seeking to have your sentence or conviction set aside?" and Miracle said he understood. (Plea Tr. 13, ECF No. 27.)

I also warned Miracle that he faced up to six months for each of the misdemeanor offenses and up to 10 years in prison for the felony offense. Miracle indicated that he understood the potential sentences and the possibility that the sentence imposed might be different than any estimate his attorney might have given him. I reviewed the rights he was waiving by pleading guilty, and he said he understood them and was pleading guilty because he was, in fact, guilty of the charge.

The prosecutor then summarized the evidence from the August 27, 2010, traffic stop. When I asked Miracle if he disputed or contested any of these facts, Miracle said he had purchased the Toyota from a friend and "didn't know there was any guns in the truck." (Partial Plea Tr. 2, ECF No. 11.) He continued, "I have no way of fighting this case, or anything, and I thought I would just plead guilty to it, chalk it up as a bad experience, and go on and try to get it over with . . . ." (*Id.*)

The colloquy continued as follows:

> THE COURT: . . . Well, Mr. Miracle, you understand that the Government would have to prove, in order to convict you, that you knowingly possessed the firearms . . . . Meaning that you knew you had the firearms, and you didn't have them by accident or mistake. So, the Government would have to prove that. Do you understand that?
>
> THE DEFENDANT: I understand, sir.
>
> THE COURT: And you understand you have a right, if you desire to plead not guilty, to require the Government to prove to the satisfaction of a jury beyond a reasonable doubt that you knowingly possessed the firearm?
>
> THE DEFENDANT: Yes, sir, I understand.
>
> THE COURT: And what I understand you're telling me is that even though you say that you didn't know the firearms were in the vehicle, you believe that you would be convicted, and therefore that is why you are pleading guilty?
>
> THE DEFENDANT: Yeah.
>
> THE COURT: Ms. Dickenson [defense counsel], anything you want to add?
>
> MS. DICKENSON: No, Your Honor. Mr. Miracle was advised of what the park rangers' testimony would be regarding his statements and gestures in the car.

(*Id.* 2-3.) I then asked Miracle if he had any questions about the colloquy or if he needed to talk to his attorney, and he said, "no." (Plea Tr. 22, ECF No. 27.) I asked, "How do you now plead to the charges contained in the information . . . guilty or not guilty?" (*Id.*) Miracle responded, "Guilty, sir." (*Id.*) I found that

Miracle had entered a knowing and voluntary plea to the offenses and adjudged him guilty and scheduled a later sentencing date.

The Presentence Investigation Report ("PSR") prepared by a probation officer in advance of sentencing calculated Miracle's Base Offense Level at 14 under the advisory Sentencing Guidelines. The PSR initially recommended that Miracle was entitled to a reduction for acceptance of responsibility. The government objected to any such reduction, based on Miracle's untruthful testimony at the plea hearing, and the probation officer amended the PSR to recommend against any reduction for acceptance of responsibility. The PSR reported that Miracle's past convictions garnered him 10 criminal history points, for a Criminal History Category of V, with a resulting custody range of 33 to 41 months. Finally, the PSR recommended an upward departure from the guideline range on the basis that Miracle's Criminal History Category did "not adequately reflect the seriousness of [his] past criminal conduct or the likelihood that [he would] commit other crimes," and that an upward variance might also be warranted, "given the nature and circumstances of the offense and the history and characteristics of the defendant," and "to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct and to protect the public from [Miracle's] further crimes . . . ." (PSR ¶¶ 94-99.)

At sentencing, defense counsel asked Miracle, "[C]an you tell us in your own words what makes you guilty?" (Sent. Tr. 3, ECF No. 31.) Miracle said that he had received a $12,000 insurance settlement on the day of his arrest, and celebrated this event by spending the day paying off his debts, buying two firearms and a truck, and firing the guns, all while drinking alcohol. Miracle admitted that he had purchased the guns found in the truck, but claimed that he did not "really" (*id*. 4.) remember what happened the day the rangers pulled him over. He said, "It's kind of blurry." (*Id.*) He also said again that he did not know any guns were in the truck, but admitted that he had probably put them there. He claimed he was "pretty well intoxicated that day," although he had told the rangers that he had only had a few beers. (*Id.* 25.)

On cross examination, the prosecutor pointed out the contradictions between this story and Miracle's statements at the plea hearing, claiming he had no knowledge that the guns were in the truck he purchased. The prosecutor entered as exhibits written summaries of post-guilty plea interviews with several witnesses whose statements undermined Miracle's claim that he did not know guns were in the truck. These witnesses would have testified that, earlier in the day of the arrest, Miracle purchased the firearms found in the truck, bragged about them, showed them to other people, fired the guns, and consumed a large quantity of beer.

Defense counsel argued that despite the inconsistencies in Miracle's accounts, he should receive a two-point reduction in his Base Offense Level under the U.S. Sentencing Guidelines Manual § 3C1.1 for acceptance of responsibility. Counsel also argued that a guideline sentence was appropriate, based on Miracle's hard life after losing his parents at an early age and his struggles with alcohol addiction. The government argued against any reduction for acceptance of responsibility and favored the maximum sentence on each petty offense and a sentence above the guideline range for the felony offense.

> In response to counsel's arguments, I found that Miracle had
>
> not truthfully admitted the conduct comprising the offense of conviction, . . . and I do not believe that his other conduct of pleading guilty overcomes what, to me, is his clear refusal to accept his responsibility.
>
> In essence, he simply blames everything on the fact that he was drunk, and by his reasoning that excuses his opportunity to really accept what he has done.
>
> For that reason I will deny the defendant's objection . . . .

(*Id.* 44-45.) I adopted the PSR calculations and found Miracle's guideline range to be 33 to 41 months. I agreed that an sentence above the guideline range was appropriate to protect the public in light of his "persistent serious and dangerous conduct over his adult life" coupled with his "life long untreated alcoholism." (*Id.*

51-52.)[1]  I sentenced Miracle to 84 months on the felony offense and six months on each of the two petty offenses, with the sentences to be served consecutively for a total term of 96 months imprisonment.

Miracle appealed his conviction, arguing that he received no consideration for his guilty plea for which there was an inadequate factual basis.  The government moved to dismiss the appeal based on Miracle's plea agreement waiver of his right to appeal.  The Fourth Circuit refused to enforce the waiver as to Miracle's guilty plea challenge, because the appeal waiver extended only to his sentence and not to the validity of his guilty plea.  *United States v. Miracle*, 461 F. App'x 362, 363 (4th Cir.) (unpublished), *cert. denied*, 132 S. Ct. 1767 (2012).  Nevertheless, the court affirmed the convictions.  *Id.* at 363-64.

In his timely § 2255 motion, Miracle asserts that his convictions are invalid based upon ineffective assistance by counsel.  Specifically, Miracle contends that counsel was ineffective for: (1) "not having [Miracle] subjected to a mental examination to determin[e] whether he was suffering from diminished capacity at the time of the offenses"; and (2) "advising [Miracle] to plead guilty knowing that he stated he could not remember said events."  (2255 Mot. 4.)  Miracle asserts that from his history of head trauma, meningitis, and memory problems, counsel should

---

[1]  In addition to other convictions, the PSR described records showing that Miracle had six and possibly seven prior DUI convictions and eight driving without a license convictions.  In fact, he admitted that he "probably" had more than 10 DUI convictions.  (*Id.* 17.)

have moved for a mental examination, which would have supported a diminished capacity defense.

II

It is settled circuit law that a "criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary." *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Whether the waiver is intelligent and voluntary depends "'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct of the accused.'" *United States v. Davis*, 954 F.2d 182, 186 (4th Cir. 1992) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). If the court concludes that the defendant's waiver of collateral-attack rights was knowing and voluntary, the defendant "cannot challenge his conviction or sentence in a § 2255 motion," unless his claims fall outside the scope of the waiver. *Lemaster*, 403 F.3d at 220. Moreover, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should . . . dismiss any § 2255 motion [or claim] that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221-22.

Unlike the appeal waiver rejected by the Fourth Circuit, the waiver of collateral attack rights in Miracle's Plea Agreement is clearly worded and broad in scope:

> I waive any right I may have to collaterally attack, in any future proceeding, any order issued in this matter and agree I will not file any document which seeks to disturb any such order. **I agree and understand if I file any court document seeking to disturb, in any way, any order imposed in my case, such action shall constitute a failure to comply with a provision of this agreement.**

(Plea Agreement 9.) During the colloquy, I asked Miracle expressly if he understood that this waiver meant he "could not at a later time file a motion or petition seeking to have [his] sentence or conviction set aside," and he said he understood. (Plea Tr. 13, ECF No. 27) Further, from Miracle's responses during the colloquy, concerning his background, his discussions with counsel about the offenses, potential penalties, and trial rights he was waiving, I find now, as I did then, that his plea and his waiver of § 2255 rights were knowing and voluntary and, therefore, valid and enforceable.

Miracle essentially claims that but for counsel's failure to move for a competency test, Miracle might have negotiated a plea agreement with no waivers or presented a mental health defense at trial, or garnered a sentence reduction for diminished capacity. These claims are insufficient to undermine the validity of his guilty plea, however, because they necessarily rest on assertions directly contradictory of statements Miracle made during the plea colloquy. Miracle

expressly denied having been treated for mental or emotional problems and denied having any serious health problems. Moreover, his attorney said she had no reason to doubt Miracle's competency to enter a guilty plea, and Miracle's demeanor during the plea hearing gave me no reason to doubt his understanding of the proceedings.

Most importantly, during the plea hearing, Miracle gave no indication that he had any trouble remembering events from the day of his arrest. He offered a detailed description of buying the truck without knowing it contained firearms and trying, in vain, to convince the truck's former owner to claim the items. Miracle's memory problems surfaced only at sentencing, after the government presented evidence from Miracle's friends and neighbors contradicting his claimed ignorance that his truck had guns under the seat.

Because Miracle's allegations of ineffective assistance related to his guilty plea have no factual basis in the record and directly contradict his testimony during the plea hearing, under oath, these claims are "palpably incredible" and must be dismissed. *Lemaster*, 403 F.3d at 221. Such frivolous claims of ineffective assistance cannot constitute an extraordinary circumstance undermining confidence in the plea hearing statements upon which I found Miracle's guilty plea and waiver of § his 2255 rights to be valid. His remaining claim of ineffective assistance with regard to sentencing has no bearing on the validity of his guilty plea or the waiver

of § 2255 rights.  Accordingly, I find that Miracle's ineffective assistance claims are barred from review under § 2255 by his valid waiver of collateral attack rights. For these reasons, the Motion to Dismiss will be granted.

    A separate Order will be entered herewith.

                          DATED:   December 12, 2013

                          /s/  James P. Jones
                          United States District Judge